# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA PINEDA,<br><br>              Plaintiff,<br><br>        v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>              Defendant. | Case No.  1:22-cv-01287-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 18, 22) |

**I.**

**INTRODUCTION**

Plaintiff Laura Pineda ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for Social Security benefits pursuant to Title XVI of the Social Security Act.  Defendant filed a cross-motion for summary judgment and opposition to Plaintiff's brief.  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument, to Magistrate Judge Stanley A. Boone.[1]  For the reasons set forth below, Plaintiff's appeal shall be denied and

---

[1]  The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (ECF Nos. 7, 9, 11.)

1    Defendant's cross-motion for summary judgment shall be granted.

2                                          **II.**

3                                    **BACKGROUND**[2]

4        On February 6, 2020, Plaintiff filed an application for Supplemental Security Income

5    ("SSI") under Title XVI, alleging disability beginning June 1, 2009.[3]  (Admin. Rec. ("AR") 264–

6    76, 291–98, ECF Nos. 15-1, 15-2.)  Plaintiff alleges disability based on foot pain, a torn disc in

7    her back, tendonitis in both arms, and gallstone surgery.  (AR 292.)

8        Plaintiff's claim was initially denied on May 8, 2020, and denied upon reconsideration on

9    July 28, 2020.  (AR 157, 168.)  On June 2, 2021, Plaintiff, represented by counsel,[4] appeared via

10   telephonic conference for an administrative hearing before the Administrative Law Judge Charles

11   Woode (the "ALJ").  (AR 112–45.)  Vocational expert ("VE") Valerie Williams also testified at

12   the hearing.  On September 1, 2021, the ALJ issued a decision denying benefits.  (AR 57–73.)

13   On August 9, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's

14   decision the final decision of the Commissioner.  (AR 1–7.)

15       Plaintiff initiated this action in federal court on October 10, 2022, and seeks judicial

16   review of the denial of her application for benefits.  (ECF No. 1.)  The Commissioner lodged the

17   administrative record on January 9, 2023.  (ECF No. 15.)  On March 24, 2023, Plaintiff filed a

18   motion for summary judgment appealing the Commissioner's decision.  (ECF No. 18.)  On May

19   22, 2023, Defendant filed a cross-motion for summary judgment and brief in opposition to

20   Plaintiff's brief.  (ECF No. 22.)  No reply was filed and the matter is deemed submitted on the

21   pleadings.

22

23   [2] For ease of reference, the Court will refer to the administrative record by the pagination provided by the
     Commissioner and as referred to by the parties, and not the ECF pagination.  However, the Court will refer to the
24   parties' briefings by their ECF pagination.

25   [3] While Plaintiff's complete medical history (*i.e.*, records of a claimant's medical sources covering at least the 12
     months preceding the month in which an application is filed) must be considered for purposes of his application, 20
26   C.F.R. § 416.912, the Court notes that SSI benefits are not payable prior to the month following the month in which
     the application was filed, 20 C.F.R. § 416.335, and therefore the ALJ's disability determination is whether Plaintiff
27   was under a disability as of the date the application was filed.

28   [4] Plaintiff was represented during the administrative proceedings by attorney Jonathan O. Pena, of Pena & Bromberg,
     Attorneys at Law, who continues to represent Plaintiff in the instant matter.  (See AR 60, 181–84; ECF No. 19.)

                                            2

# III.

## LEGAL STANDARD

### A.    The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[5] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[6] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is

---

[5] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

[6] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only SSI benefits in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes the cases and regulations cited herein are applicable to the instant matter.

on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[7]  A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. § 404.1527(d)(2) (RFC is not a medical opinion); 20 C.F.R. § 404.1546(c) (identifying the ALJ as responsible for determining RFC).  "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), or call a VE.  See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsbury, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' "  Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

///

---

[7] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

1

### B.      Standard of Review

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision.  See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).  "[T]he threshold for such evidentiary sufficiency is not high."  Biestek, 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard."  Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  Stout, 454 F.3d at 1055–56.  Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination."  Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment

for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

**IV.**

**THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The ALJ conducted the five-step disability analysis and made the following findings of fact and conclusions of law as of the date of the decision, September 1, 2021 (AR 62–69):

At step one, the ALJ determined Plaintiff has not engaged in substantial gainful activity since February 6, 2020, the application date.  (AR 62 (citing 20 C.F.R. §§ 416.971 et seq.).)

At step two, the ALJ determined Plaintiff has the following severe impairments: lumbar degenerative disc disease with disc bulging; bilateral tibial tendinitis; plantar fasciitis; and flat feet.  (AR 62–63 (citing 20 C.F.R. § 416.920(c)).)

At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (AR 63 (citing 20 C.F.R. §§ 416.920(d); 416.925; 416.926).)

In reaching this decision, the ALJ considered Plaintiff's severe physical impairments under the listings, specifically Listing 1.15 (musculoskeletal disorder, disorders of skeletal spine) and 1.16 (musculoskeletal disorder, lumbar spinal stenosis).  However, the ALJ found the evidence did not show the necessary clinical signs of muscle weakness, signs of nerve root irritation or compression, and sensory or reflex reduction present in a close proximity of time.  Nor did the imagining show clear evidence of cauda equina compromise.  Nor did Plaintiff's spinal disorders result in limitations involving a documented medical need for assistive devices requiring both hands to walk, a documented medical need for an assistive device requiring one hand to walk as well an inability to use the other hand to perform activities requiring fine and gross movements independently; or an inability to use either hand to perform activities requiring fine and gross movements independently; therefore, the ALJ concluded Plaintiff does not meet the listings.  The ALJ also considered Listing 1.18 (musculoskeletal disorder, abnormality of a

major joint(s) in any extremity) for Plaintiff's tibial and foot disorders.  (Id.)  But the ALJ did not find any evidence that these impairments affect Plaintiff's bilateral upper extremities to the extent that Plaintiff cannot use either arm to perform activities involving fine or gross movements.  Nor did the ALJ find evidence of reliance on an assistive device requiring two hands to walk; therefore, the ALJ concluded Plaintiff does not meet this listing either.

Before proceeding to step four, the ALJ determined Plaintiff has the RFC to perform:

> **light work as defined in 20 CFR 416.967(b) except she can stand or walk for four hours and sit for six hours.  She can occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs.  She cannot climb ladders, ropes, or scaffolds.  She should avoid concentrated exposure to hazards such as unprotected heights and dangerous machinery.  She requires the opportunity to use custom braces and a cane for standing and walking.  She requires the opportunity to elevate her legs up to waist-level for a total of 15–20 minutes during her customary work break.**

(AR 64–67 (citing 20 C.F.R. § 416.929; SSR 16-3p, available at 2017 WL 5180304 (Oct. 25, 2017)) (emphasis in original).)

At step four, the ALJ found Plaintiff has no past relevant work.  (AR 67 (citing 20 C.F.R. § 416.965).)

At step five, the ALJ noted Plaintiff was born on January 1, 1975, and was 45 years old (which is defined as a younger individual age 18–49) on the date the application was filed; Plaintiff has a limited education; and transferability of job skills is not an issue in this case because Plaintiff does not have any past relevant work.  (Id. (citing 20 C.F.R. §§ 416.963; 416.964; 416.968).)  Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (20 C.F.R. §§ 416.969; 416.969(a)), such as:

- Office Helper (Dictionary of Occupational Titles ("DOT") 239.567-010), a light exertional work position with a specific vocational preparation ("SVP") level of 2, and approximately 14,300 jobs in the national economy; and

- Bench Assembler (DOT 706.684-022), a light exertional work position with an SVP of 2, and approximately 319,000 jobs in the national economy, but reduced by 50% because of

1    the limitations in the RFC to 159,500 jobs in the national economy.

2    (AR 67–68.)   With respect to the identified jobs, the ALJ noted the VE's testimony was

3    consistent with the DOT, but as to all aspects of employment activities or duties—such as

4    discussions of breaks, time off-task, reduced standing/walking, and elevation of extremities—that

5    were not covered by the DOT, the ALJ relied on the VE's testimony based on her extensive

6    training, education, and experience in the area of vocational counseling and rehabilitation and

7    expertise in this field.  (AR 68.)

8        Therefore, the ALJ found Plaintiff has not been under a disability, as defined in the Social

9    Security Act, since February 6, 2020, the date the application was filed.  (AR 68–69 (citing 20

10   C.F.R. § 416.920(g)).)

11                                              **V.**

12                                      **DISCUSSION**

13       On appeal, Plaintiff purports to raise two challenges to the ALJ's decision: (1) whether the

14   ALJ "failed to include work-related limitations in the RFC consistent with the nature and

15   intensity of Plaintiff's limitations, and failed to offer legitimate reasons for rejecting Plaintiff's

16   subjective complaints;" and (2) whether the ALJ erred in failing to reconcile conflicts between

17   the VE's testimony, the DOT, and the ALJ's established RFC.[8]  (ECF No. 18 at 3, 11–16.)

18       **A.      Whether the ALJ Properly Evaluated the Subjective Symptom Testimony**

19       Plaintiff argues the ALJ's discussion of the medical records and finding that they do not

20   support her allegations is an insufficient reason to discount her symptom allegations.  (Id. at 12.)

21   In particular, Plaintiff argues the ALJ did not properly evaluate her allegation that she would be

22   "off-task" every day due to her need to lie down for 20–30 minutes per day and to elevate her leg

23

24   _____

[8] As an additional note, the Court is cognizant that, in raising only the two aforementioned issues, Plaintiff has waived argument with respect to any other matter.  Lewis, 236 F.3d at 517 n.13; Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) (stating court "will not consider any claims that were not actually argued in appellant's opening brief" and will only "review … issues which are argued specifically and distinctly in a party's opening brief.").  Particularly of note here, Plaintiff has not challenged the ALJ's step two and three determinations identifying her severe impairments; she does not challenge the ALJ's evaluation of the objective medical record or the medical opinion evidence, or the weight he accorded to those opinions; and Plaintiff does not challenge the ALJ's RFC determination with respect to her capacity for light work or any of the other functional limitations beyond those identified in her first issue presented.  The practical effect of Plaintiff's waiver is a concession that the ALJ properly considered all other medical and non-medical evidence of record in formulating the RFC.

for 15–20 minutes per day.  (Id. at 12–14.)  However, as discussed herein, the ALJ discounted Plaintiff's testimony based not only because it was unsupported by the objective medical evidence, but also for other clear and convincing reasons based on substantial evidence in the record.

### 1.   Plaintiff's Symptom Testimony

In her disability application, Plaintiff alleged disability based on foot pain (from bone spurs and a broken toe), a torn disc in her back, bilateral tendonitis in arms and legs, and post-gallstone surgery.  (AR 292, 295.)  She alleged she could not lift/carry objects heavier than four pounds, and did little cleaning because it would take longer to complete chores and after doing activities she felt exhausted.  (AR 304–05, 306.)  She was in pain after walking from her apartment to the mailbox; she could only drive a few miles due to pain from being seated in her car.  (AR 304–05.)

At the administrating hearing, she testified that she was single, living with her five children, ages 2 to 16.  (AR 123.)  She testified she would drive approximately every three days but could not sit a long time due to back pain.  (AR 124–25.)  Plaintiff testified she took a long car trip (approximately three hours) in 2021 with her boyfriend, who drove.  (AR 125–26.)  But she could only drive herself short distances, for about 20–30 minutes at a time.  (AR 127–28.)

Plaintiff testified she experiences lower back pain and spasming constantly, every day, at a typical pain level of 8/10, even with medication.  (AR 128–30.)  Plaintiff testified she underwent physical therapy, which did not work, and now she just receives medication to treat her back pain.  (AR 130.)  Plaintiff also got a scooter.  (AR 131.)

Plaintiff testified she had surgery on her right foot in November 2016, and still experiences pain; she testified her foot gets swollen most of the time, and sometimes her toes would be numb.  (AR 131.)  Plaintiff received medicine and an ice pack to treat the swelling; and she testified that sometimes she has to elevate her foot twice a day (10 a.m. and 6:00 p.m.), for 15–20 minutes; she does this by sitting on her couch with her leg elevated at waist level, or by lying on her bed.  (AR 134–35, 138–39.)  Plaintiff testified that she recently started experiencing swelling and numbness in her left foot as well.  (AR 134.)  Plaintiff also got ankle and foot

1   braces; she no longer uses the ankle brace.  (AR 132–33.)  Plaintiff reported "really bad" pain in

2   her leg/knee and was diagnosed with arthritis.  (AR 132.)

3        Plaintiff testified that she can only stand for 10–15 minutes before she has to sit down.

4   (AR 135.)  She testified that she can only walk for 15 minutes before needing to sit down/take a

5   break.  (Id.)  Plaintiff testified she recently got a cane to assist her with walking and standing.

6   (AR 136.)  She testified that she can only sit for 15 minutes.  (Id.)  She testified she can only lift

7   and carry 10–15 pounds.  (Id.)  Plaintiff testified she generally spends her time watching TV; she

8   can do a little dusting and take out small bags of trash; she can cook meals and do chores for

9   about 20 minutes at a time; and she has to lie down and rest for 20–30 minutes during the day.

10  (AR 137–38.)

11        2.    Legal Standard

12        A claimant's statements of pain or other symptoms are not conclusive evidence of a

13  physical or mental impairment or disability.  42 U.S.C. § 423(d)(5)(A); SSR 16-3p; see also Orn,

14  495 F.3d at 635 ("An ALJ is not required to believe every allegation of disabling pain or other

15  non-exertional impairment.").  Rather, an ALJ performs a two-step analysis to determine whether

16  a claimant's testimony regarding subjective pain or symptoms is credible.  See Garrison v.

17  Colvin, 759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; SSR 16-3p, at *3.  First, the

18  claimant must produce objective medical evidence of an impairment that could reasonably be

19  expected to produce some degree of the symptom or pain alleged.  Garrison, 759 F.3d at 1014;

20  Smolen, 80 F.3d at 1281–82.  If the claimant satisfies the first step and there is no evidence of

21  malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms

22  only by providing specific, clear, and convincing reasons for doing so."  Lambert v. Saul, 980

23  F.3d 1266, 1277 (9th Cir. 2020) (citations omitted).

24        If an ALJ finds that a claimant's testimony relating to the intensity
         of his pain and other limitations is unreliable, the ALJ must make a
25       credibility determination citing the reasons why the testimony is
         unpersuasive.  The ALJ must specifically identify what testimony is
26       credible and what testimony undermines the claimant's complaints.
         In this regard, questions of credibility and resolutions of conflicts in
27       the testimony are functions solely of the Secretary.

28  Valentine v. Astrue, 574 F.3d 685, 693 (9th Cir. 2009) (quotation omitted); see also Lambert, 980

1    F.3d at 1277.

2         In addition to the medical evidence, factors an ALJ may consider include the location,

3    duration, and frequency of the pain or symptoms; factors that cause or aggravate the symptoms;

4    the type, dosage, effectiveness or side effects of any medication; other measures or treatment used

5    for relief; conflicts between the claimant's testimony and the claimant's conduct—such as daily

6    activities, work record, or an unexplained failure to pursue or follow treatment—as well as

7    ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, internal

8    contradictions in the claimant's statements and testimony, and other testimony by the claimant

9    that appears less than candid.   See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014);

10   Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d

11   1028, 1040 (9th Cir. 2007); Smolen, 80 F.3d at 1284.   Thus, the ALJ must examine the record as

12   a whole, including objective medical evidence; the claimant's representations of the intensity,

13   persistence and limiting effects of her symptoms; statements and other information from medical

14   providers and other third parties; and any other relevant evidence included in the individual's

15   administrative record.   SSR 16-3p, at *5.

16        3.   Analysis

17        Here, the ALJ found Plaintiff had the severe medical impairments of lumbar degenerative

18   disc disease with disc bulging, bilateral tibial tendinitis, plantar fasciitis, and flat feet.   (AR 62.)

19   The ALJ found the record supported a finding that Plaintiff's medically determinable

20   impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's

21   statements concerning the intensity, persistence, and limiting effects of such symptoms were not

22   entirely consistent with the medical evidence and other evidence of record.   (AR 64.)   The ALJ

23   was thus required to provide specific, clear and convincing reasons for discounting Plaintiff's

24   testimony.   Lambert, 980 F.3d at 1277.   The Court finds the ALJ's negative credibility

25   determination was based on specific, clear and legitimate reasons that were supported by

26   substantial evidence, as follows.

27        **a.    Allegations Unsupported/Contradicted by the Objective Medical Evidence**

28        Subjective pain testimony "cannot be rejected on the sole ground that it is not fully

corroborated by objective medical evidence."  See Vertigan, 260 F.3d at 1049 ("The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it."); see also 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").  Rather, where a claimant's symptom testimony is not fully substantiated by the objective medical record, the ALJ must provide an additional reason for discounting the testimony.  See Burch, 400 F.3d at 680–81.

Nevertheless, the medical evidence "is still a relevant factor in determining the severity of [the] claimant's pain and its disabling effects."  Burch, 400 F.3d at 680–81; Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).  Furthermore, Ninth Circuit caselaw has distinguished testimony that is "uncorroborated" by the medical evidence from testimony that is "contradicted" by the medical records, deeming the latter sufficient on its own to meet the clear and convincing standard.  See Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) ("The ALJ … identified several contradictions between claimant's testimony and the relevant medical evidence and cited several instances of contradictions within the claimant's own testimony.  We will not reverse credibility determinations of an ALJ based on contradictory or ambiguous evidence."); Hairston v. Saul, 827 Fed. App'x 772, 773 (9th Cir. 2020) (quoting Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008) (affirming ALJ's determination claimant's testimony was "not entirely credible" based on contradictions with medical opinion)) ("[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); see also see also Stobie v. Berryhill, 690 Fed. App'x 910, 911 (9th Cir. 2017) (finding ALJ gave two specific and legitimate clear and convincing reasons for rejecting symptom testimony: (1) insufficient objective medical evidence to establish disability during the insured period and (2) symptom testimony conflicted with the objective medical evidence); Woods v. Comm'r of Soc. Sec., No. 1:20-cv-01110-SAB, 2022 WL 1524772, at *10 n.4 (E.D. Cal. May 13, 2022) ("While a *lack* of objective medical evidence may not be the sole basis for rejection of symptom testimony, inconsistency with the medical evidence

12

or medical opinions can be sufficient." (emphasis in original)).

The Ninth Circuit's analysis in Carmickle is most instructive here. In Carmickle, the ALJ rejected the claimant's testimony as to four specific allegations, including the allegation that he could only lift ten pounds occasionally. Carmickle, 533 F.3d at 1160. The ALJ rejected this allegation in favor of a physician's contradictory opinion that the claimant could lift up to ten pounds *frequently* (and twenty pounds occasionally). Id. at 1161. Notably, the claimant's contradiction with the medical opinion was the only reason the ALJ rejected this allegation as "not entirely credible." See id. at 1160–61. In applying the clear and convincing standard, the Ninth Circuit affirmed the ALJ's adverse credibility determination relating to this limitation on the basis that "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." Id. at 1161.

Here, similarly, the ALJ identified multiple reasons, in addition to the non-corroborating objective medical evidence, for discounting Plaintiff's allegations; these are discussed herein.

In one example of the objective evidence not corroborating Plaintiff's allegations, the ALJ discussed Plaintiff's testimony that she had problems functioning due to her knee pain. (AR 63.) The ALJ noted the record contained minimal reports of pain, and none until April 2021, and, while physical examinations showed tenderness and painful range of motion, x-rays of the knee were normal. (Id. (citing AR 482, 486, 489).) Further, the ALJ noted that Plaintiff wore a knee brace to her consultative examination, but the examiner noted she was wearing it from the ankle to just below the knee, and that it was "not in a position to do anything at all for the knee." (Id. (citing AR 490–501).) As a result of the objective medical evidence, the ALJ not only discounted Plaintiff's knee pain testimony, but determined it was a non-medically determinable impairment (id.)—a finding Plaintiff has not challenged.

In another example, the ALJ considered Plaintiff's allegations of back pain, and imaging showing she had degenerative disc disease in her lumbar spine. (AR 65.) The ALJ noted that, while in physical examinations, Plaintiff was purportedly unable to lie supine due to her pain, tenderness, and limited range of motion, the objective examination revealed she had normal strength and sensation in her extremities and had a normal gait; and Plaintiff's December 2019

evaluation revealed she had no tenderness and was in no distress.  (Id. (citing AR 377–78, 382, 389).)   Incidentally, Plaintiff's allegation of being unable to lie supine due to her pain is inconsistent with her subsequent testimony that she needed to lie down every day for 20–30 minutes due to her pain and need to elevate her legs.  Further, the ALJ expressly noted that, despite Plaintiff's testimony that she has to elevate her legs at least twice a day, this is not noted in any of her treatment records.  (AR 66.)  Thus, the ALJ concluded Plaintiff's allegations were unsupported by the objective evidence.

In another example, the ALJ considered Plaintiff's testimony that her podiatrist referred her for custom braces due to her pain from tibial tendinitis and pain in her arches.  (AR 65.) However, the ALJ noted Plaintiff's treatment records reflected that she was not wearing her braces consistently as prescribed.  (Id. (citing AR 341, 375, 384, 392).)   Thus, the ALJ determined Plaintiff's statements concerning the intensity, persistence and limiting effects of her alleged symptoms were not entirely consistent with the medical evidence and other evidence of record.  (AR 64–65.)

Accordingly, the Court finds the objective medical evidence referenced by the ALJ constitutes substantial evidence in the record that, in combination with the ALJ's other reasons, supports the ALJ's adverse credibility determination.  Lambert, 980 F.3d at 1277; Hairston, 827 Fed. App'x at 773; Carmickle, 533 F.3d at 1160; Woods, 2022 WL 1524772, at *10 n.4. Plaintiff's argument that the ALJ improperly evaluated her testimony because he did not expressly discuss her alleged need to lie down to elevate her legs (ECF No. 18 at 13–14) is belied by the record, which shows the ALJ considered Plaintiff's need to elevate her legs (see AR 66 (rejecting the allegation as unsupported anywhere in the medical record)) and that he expressly questioned Plaintiff about it during the administrative hearing (see AR 134–35, 137–39). Furthermore, Plaintiff's argument is unavailing because the Ninth Circuit does not require an ALJ to "perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits."  Lambert, 980 F.3d at 1277; see also Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (citing SSR 96-8p) ("[p]reparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is

1  unnecessary.").

2       **b.**     **Ordinary Techniques of Credibility Evaluation**

3       As noted, the ALJ may consider internal contradictions in the claimant's statements and

4  testimony, and other testimony by the claimant that appears less than candid to reach an adverse

5  credibility finding.  See Ghanim, 763 F.3d at 1163; Tommasetti, 533 F.3d at 1039; Lingenfelter,

6  504 F.3d at 1040; Smolen, 80 F.3d at 1284.

7       Here, the ALJ also noted Plaintiff testified she could not drive more than 30 minutes

8  because of her back pain; however, the ALJ noted this testimony was internally inconsistent with

9  Plaintiff's other testimony that she was able to ride for a three-hour road trip earlier in the year.

10  (AR 64.)  Plaintiff's internal inconsistencies in testimony constitutes an independent clear and

11  convincing reason to discount her testimony.  Therefore, even if the Court determined the ALJ's

12  review of the objective medical evidence was insufficient (which it did not), the ALJ has

13  identified other viable reasons to discount Plaintiff's symptom testimony.  See Ruiz v. Comm'r of

14  Soc. Sec. Admin., 490 Fed. App'x. 907, 908–09 (9th Cir. 2012) (affirming ALJ's decision to

15  deny benefits and concluding that, because the ALJ listed nine rationale for rejecting the

16  claimant's testimony and the claimant challenged only one of the rationale, the ALJ's conclusion

17  would still be supported by the unchallenged rationale).  Accordingly, his decision must be

18  affirmed.

19       **c.**     **Conservative Treatment**

20       Evidence that a claimant's medical treatment was relatively conservative may properly be

21  considered in evaluating a claimant's subjective complaints.  See Tommasetti, 533 F.3d at 1039–

22  40 (favorable response to conservative treatment undermined claimant's testimony of subjective

23  complaints); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative

24  treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.")

25  (citation omitted).

26       The ALJ noted Plaintiff's treatment for her conditions was limited to medications.  (AR

27  65); Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("[i]mpairments

28  that can be controlled effectively with medication are not disabling for the purpose of determining

eligibility for SSI benefits.")  Plaintiff argues she reported to her doctors that "pain medications don't last very long."  (ECF No. 18 at 13 (citing AR 430).)  However, the ALJ noted medical records in which Plaintiff reported that medication helped alleviate her pain (AR 65 (citing AR 431, 453)), and in which she denied any side effects from the medications (id. (citing AR 429, 445–46)).  She reported that her medications allowed her to perform her activities of daily living ("ADLs"), and she was "able to function well on medications without grogginess, drowsiness, or cognitive issues."  (Id. (citing AR 435–39).)  The Court finds the ALJ's conclusion was reasonably based on substantial evidence in the record.  See Drouin v. Sullivan, 966 F.2d 1255, 1258 (9th Cir. 1992) (district court must defer to the decision of the ALJ where evidence exists to support more than one rational interpretation). Plaintiff's argument, at most, constitutes an attempt to present an alternative interpretation of the evidence.  As previously noted, however, this is not sufficient to establish reversible error and the Court "may not engage in second-guessing."  Thomas, 278 F.3d at 959 (claimant's "extremely poor work history," ADLs, and internally inconsistent testimony resulted in finding of "lack of candor [that] carries over to [the claimant's] description of physical pain," and supported ALJ's conclusion that claimant was not credible with regard to her limitations and pain); see also Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999) (When the evidence presented could support either affirming or reversing the Commissioner's conclusions, the court cannot substitute its own judgment for that of the Commissioner).

Accordingly, the Court finds the ALJ identified specific, substantial evidence in the medical record in support of her finding that Plaintiff's treatment was overall conservative in nature, constituting a clear and convincing reason to discount Plaintiff's pain allegations.  Tommasetti, 533 F.3d at 1039–40; Parra, 481 F.3d at 751.

### d.      Activities of Daily Living ("ADLs")

Another reason the ALJ provided for discounting Plaintiff's testimony was her ADLs.  See Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022) ("An ALJ may also consider whether the claimant engages in activities inconsistent with the alleged symptoms.")  The ALJ noted that, despite her impairments, Plaintiff "indicated she could still drive, climb stairs, go shopping, walk

16

1    for exercise, and care for her children, one of whom is only two years old."  (AR 66 (citing AR

2    490–501).)

3           Ninth Circuit caselaw demonstrates that ADLs may be grounds for discounting allegations

4    that an impairment is so severe it is totally debilitating, even if such activities are not directly

5    transferrable to a work setting.  See Molina v. Astrue, 674 F.3d 1104, 1112–13 (9th Cir. 2012),

6    superseded by regulation on other grounds (noting "the ALJ may discredit a claimant's testimony

7    when the claimant reports participation in everyday activities indicating capacities that are

8    transferrable to a work setting … Even where those activities suggest some difficulty functioning,

9    they may be grounds for discrediting the claimant's testimony to the extent that they contradict

10   claims of a totally debilitating impairment.") (internal citations omitted); see also Fair v. Bowen,

11   885 F.2d 597, 604 (9th Cir. 1989) (affirming the ALJ's decision where the claimant's allegations

12   were inconsistent with activities of personal care, shopping, chores, riding public transportation,

13   and driving); Burch, 400 F.3d at 680 (finding the ALJ properly discounted the claimant's

14   allegations where the claimant's activities suggest higher functionality, including caring for

15   personal needs, cooking, cleaning, shopping, and interacting with family).  As the Ninth Circuit

16   has explained, "[e]ven where those activities suggest some difficulty functioning, they may be

17   grounds for discrediting the claimant's testimony to the extent that they contradict claims of a

18   totally debilitating impairment."  Molina, 674 F.3d at 1113; Valentine, 574 F.3d at 694 (while

19   daily activities "did not suggest [Plaintiff] could return to his old job [they] did suggest that

20   [Plaintiff's] later claims about the severity of his limitations were exaggerated").  Thus, even if

21   Plaintiff's activities were not particularly extensive, the ALJ's conclusion that she was not as

22   limited as she claimed was a reasonable and valid basis for discounting her allegations.

23           Importantly, the Court notes the ALJ's adverse credibility determination does not indicate

24   a complete rejection of Plaintiff's pain allegations.  To the contrary, the ALJ carefully considered

25   Plaintiff's allegations and the objective medical evidence supporting much of Plaintiff's pain

26   testimony; this is reflected in the RFC determination, which limits Plaintiff to light work only,

27   with several additional functional restrictions, plus a limitation to stand/walk for only four hours

28   in an eight-hour workday and sit for six hours in an eight-hour workday, and the requirements

that Plaintiff have the opportunity to use custom braces and a cane for standing and walking, and that she have the opportunity to elevate her legs for a total of 15–20 minutes during her customary work break.    (AR 64.)    Thus, in noting Plaintiff's testimony of debilitating symptoms was inconsistent with the record, the ALJ expressly noted his finding that Plaintiff's testimony was inconsistent only insomuch as Plaintiff's alleged limitations exceeded those set forth in the RFC assessment.

Plaintiff does not expressly challenge the ALJ's finding with respect to her ADLs and thereby waives such challenge.  Lewis, 236 F.3d at 517 n.13; Indep. Towers of Wash., 350 F.3d at 929.

In sum, the ALJ's adverse credibility determination with respect to Plaintiff's alleged impairment symptoms was properly supported by clear and convincing reasons based on substantial evidence from the record.  Because the ALJ properly reached the adverse credibility determination, his conclusion that Plaintiff did not need a limitation for lying down in order to elevate her legs, but only needed a limitation for "the opportunity to elevate her legs up to waist-level for a total of 15–20 minutes during her customary work break" is properly supported by substantial evidence.  Consequently, because the ALJ "gave sufficient reasons for rejecting [Plaintiff's] testimony, his hypothetical to the vocational expert and his [RFC] assessment did not need take [Plaintiff's] subjective complaints into consideration."  Gardner v. Barnhart, 73 Fed. App'x 193, 196 (9th Cir. 2003).

Thus, upon review of the ALJ's evaluation of the full record, the Court finds the ALJ properly synthesized the medical evidence, resolved conflicts and ambiguities in the medical testimony, and determined credibility in order to reach a well-supported RFC determination, Andrews, 53 F.3d at 1039; Batson, 359 F.3d at 1195; Lingenfelter, 504 F.3d at 1042, such that the ALJ's ultimate conclusion of nondisability is adequately supported by substantial evidence. Finally, "[a]s [the Court] cannot say that the ALJ's interpretation of the available evidence was not rational, the ALJ's conclusions were supported by substantial evidence." Shaibi v. Berryhill, 883 F.3d 1102, 1108 (9th Cir. 2017).  Accordingly, the ALJ's decision must be affirmed.

///

**B.** **Whether the ALJ Resolved Apparent Conflicts Between the VE's Testimony and the DOT, Pursuant to SSR 00-4p**

As previously noted, the ALJ reached an RFC determination that Plaintiff is capable of light work, with additional functional restrictions.  (AR 64.)  The VE testified Plaintiff was capable of performing jobs such as office helper and bench assembler.  (AR 68.)  The ALJ concluded Plaintiff was capable of performing work "such as" office helper and bench assembler in his decision.  (Id.)  Plaintiff argues apparent inconsistencies exist between the information listed in the DOT and the ALJ's conclusion that Plaintiff could perform the jobs of office helper and bench assembler, as based on the VE's testimony, that necessitate remand.  (ECF No. 18 at 14–16.)

1.   Legal Standard

As previously noted, at step five, the Commissioner must "identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations."  Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (citation and internal quotations omitted).  That is, the ALJ must consider potential occupations the claimant may be able to perform, based on the claimant's RFC, age, education and work experience, and the information provided by the DOT and the VE.  See id. at 846; Valentine, 574 F.3d at 689; 20 C.F.R. § 416.920(g).

"The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings."  SSR 00-4p, available at 2000 WL 1898704 (Dec. 4, 2000).  "The term 'occupation,' as used in the DOT, refers to the collective description of those jobs.  Each occupation represents numerous jobs."  Id.; see also Johnson, 60 F.3d at 1435 (noting the DOT is not comprehensive, that "[i]ntroduction of evidence of the characteristics of specific jobs available in the local area through the testimony of a vocational expert is appropriate, even though the job traits may vary from the way the job title is classified in the DOT," and holding "[T]he ALJ was within his rights to rely solely on the vocational expert's testimony.") (citations omitted).  Information about a particular job's requirements may be available from a VE's experience in job placement or career

19

counseling.  SSR 00-4p.  Thus, a VE may be able to provide more specific information about jobs or occupations than the DOT.  Id.; see also Lounsburry, 468 F.3d at 1114.  Accordingly, the ALJ may rely on VE testimony regarding "(1) what jobs the claimant, given his or her [RFC], would be able to do; and (2) the availability of such jobs in the national economy."  Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999); Lockwood v. Comm'r of Soc. Sec., 616 F.3d 1068, 1071 (9th Cir. 2010) (the ALJ can meet the agency's burden of proving that other work exists in significant numbers by the testimony of a VE).

Nonetheless, hypothetical questions posed to the VE must set out all the limitations and restrictions of the particular claimant, as supported by the medical record.  Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Where the testimony of a VE is used, the VE must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy.  20 C.F.R. § 404.1566(b); see Burkhart v. Bowen, 856 F.2d 1335, 1340 n. 3 (9th Cir. 1988).

SSR 00-4p provides that where there is an apparent unresolved conflict between VE evidence and the DOT, the ALJ is required to reconcile the inconsistency; that is, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE to support a determination or decision about whether the claimant is disabled.  SSR 00-4p, at *2; see also Johnson, 60 F.3d at 1435 (holding that, if the ALJ relies on a VE's testimony that contradicts the DOT, the record must contain "persuasive evidence to support the deviation.").  "An example of a conflict between the DOT and a VE's testimony is when the DOT's description of a job includes activities a claimant is precluded from doing, and the VE nonetheless testifies that the claimant would be able to perform that job."  Martinez v. Colvin, No. 1:14-cv-1070-SMS, 2015 WL 5231973, at *4 (E.D. Cal. Sept. 8, 2015) (citations omitted); see also Zavalin, 778 F.3d at 846 (providing example of apparent conflict as "expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle").  The ALJ must inquire, on the record at the disability hearing, as to whether or not there is such consistency.  SSR 00-4p, at *2; Massachi v. Astrue, 486 F.3d 1149, 1153–54 (9th Cir. 2007).  Further, the Social Security Administration ("SSA") notes neither the DOT nor the VE's evidence

"automatically 'trumps' when there is a conflict"; rather, the ALJ must resolve the conflict by determining if the explanation given by the VE is reasonable and provides a basis for relying on the VE's testimony rather than the DOT information.  SSR 00-4p, at *2.

Where the ALJ fails to resolve an apparent inconsistency, the court is left with "a gap in the record that precludes [it] from determining whether the ALJ's decision is supported by substantial evidence."  Zavalin, 778 F.3d at 846; Massachi, 486 F.3d at 1154 ("we cannot determine whether the ALJ properly relied on [the VE's] testimony" due to unresolved occupational evidence).  Nevertheless, a failure to ask the VE whether her testimony conflicts with the DOT may amount to harmless error if there is no conflict, or if the VE provides "sufficient support for her conclusion so as to justify any potential conflicts."  Massachi, 486 F.3d at 1154, n.19; see also Hann v. Colvin, No. 12-cv-06234, 2014 WL 1382063, at *15 (N.D. Cal. Mar. 28, 2014).

2.    Analysis

As previously noted, the RFC includes the following limitations: "[Plaintiff] requires the opportunity to use custom braces and a cane for standing and walking."  (AR 64.)  Plaintiff argues an apparent conflict exists between the DOT and VE's testimony because her need to use a cane (by holding the cane in one hand) will obviously limit her ability to use both hands, a work requirement that is denoted by the work "helper" in the job "office helper" and the word "assembler" in the job "bench assembler" that were identified by the VE.  (ECF No. 18 at 15.) The Court finds Plaintiff's arguments unavailing, as follows.

a.    **No Conflict Exists Between the DOT and the VE's Testimony**

First, the Court finds there is no apparent conflict between the DOT job requirements for office helper and bench assembler, and the VE's testimony based on Plaintiff's RFC limitations. The DOT provides the following descriptions for the jobs identified by the VE:

An office helper:

> Performs any combination of following duties in business office of commercial or industrial establishment: Furnishes workers with clerical supplies.  Opens, sorts, and distributes incoming mail, and collects, seals, and stamps outgoing mail.  Delivers oral or written messages.  Collects and distributes paperwork, such as records or

timecards, from one department to another.  Marks, tabulates, and files articles and records.  May use office equipment, such as envelope-sealing machine, letter opener, record shaver, stamping machine, and transcribing machine.  May deliver items to other business establishments [DELIVERER, OUTSIDE (clerical) 230.663-010].   May specialize in delivering mail, messages, documents, and packages between departments of establishment and be designated Messenger, Office (clerical).  May deliver stock certificates and bonds within and between stock brokerage offices and be designated Runner (financial).

Office Helper, DOT 239.567-010, available at 1991 WL 672232 (Jan. 1, 2016).  A simple review of the job description reveals there are many tasks that could just as easily be performed from a sitting position as a standing one; thus, it is not obvious or apparent that Plaintiff will need to use her cane to complete the tasks of office helper.  Furthermore, it is not obvious from the face of the job description that all tasks would require both hands must be utilized.

A bench assembler (alternatively referred to in the DOT as "assembler, small products I"):

Performs any combination of following repetitive tasks on assembly line to mass produce small products, such as ball bearings, automobile door locking units, speedometers, condensers, distributors, ignition coils, drafting table subassemblies, or carburetors: Positions parts in specified relationship to each other, using hands, tweezers, or tongs.  Bolts, screws, clips, cements, or otherwise fastens parts together by hand or using handtools or portable powered tools.  Frequently works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker.   Loads and unloads previously setup machines, such as arbor presses, drill presses, taps, spot-welding machines, riveting machines, milling machines, or broaches, to perform fastening, force fitting, or light metal-cutting operation on assembly line.  May be assigned to different work stations as production needs require or shift from one station to another to reduce fatigue factor.   May be known according to product assembled.

Bench Assembler, DOT 706.684-022, available at 1991 WL 679050 (Jan. 1, 2016).  As with the office helper position, the DOT is silent with respect to whether Plaintiff is required to stand in order to complete her tasks.  Instead, it appears that the bench assembler position, which requires work at a bench and/or assembly line provides for "different work stations" and "shift[ing] from one station to another to reduce fatigue factor," suggests the job provides for both sitting and standing options.

Furthermore, the DOT's descriptions for these jobs do not include activities a claimant

with Plaintiff's RFC limitations is precluded from doing, Martinez, 2015 WL 5231973, at *4, and Plaintiff does not identify any such activities in support of her general arguments.  To the contrary, Plaintiff argues "*[b]efore turning to the job descriptions as they appear in the DOT … it is obvious that jobs that have the word 'helper' or 'assembler' in their title will require exposure* [sic] *frequent use of both hands*"; but Plaintiff never discusses any of the activities identified in the job descriptions in the DOT.  (ECF No. 18 at 15 (emphasis added).)  Plaintiff further asserts "it is evident that one of Plaintiff's hands will be occupied with a cane" (id.), presupposing the identified jobs will require Plaintiff to be standing at all times, but this assertion is equally conclusory and lacking any reference to supporting language in the DOT.

Accordingly, the Court concludes there is no obvious conflict between the DOT and the VE's testimony with respect to the officer helper and bench assembler jobs.  On this record, Plaintiff's argument that these jobs will "obviously" require standing and, therefore, frequent use of both hands (thus requiring Plaintiff to use her cane and only have one hand available) is unpersuasive.  Plaintiff's argument appears to be based on her own lay opinion and speculation, which does not outweigh the plain language of the DOT or the VE's expertise, neither of which Plaintiff challenged at the hearing.  Further, Plaintiff's argument is conclusory, as no evidence has been presented in support of this new argument.  Without more, Plaintiff's conclusory argument is unpersuasive.  Accordingly, the Court concludes the ALJ had no further duty to reconcile the purported conflict, and any error was harmless.  Gutierrez v. Colvin, 844 F.3d 804, 807–08 (9th Cir. 2016).

**b.      The ALJ Properly Resolved Any Conflict at the Hearing**

Furthermore, the hearing transcript indicates the ALJ did resolve any apparent conflict.  Importantly, the VE had reviewed Plaintiff's record, heard her testimony, and was aware of the specific limitations in the RFC when she testified that a hypothetical person with Plaintiff's RFC could perform the identified jobs.  (Compare AR 64 with AR 140–41.)  Specifically, at the hearing, the ALJ presented a hypothetical RFC that included limitations to "light exertional level, and that individual can stand or walk for four hours and sit for six hours … [and] requires the opportunity to use custom braces and a cane for standing and walking…." (AR 140–41.)  Based

on the presented hypothetical, the VE testified that light exertional jobs available to the described hypothetical person included office helper and bench assembler.  (AR 141.)  Furthermore, as to the bench assembler position, the VE expressly opined the number of approximately 319,000 jobs would be eroded by 50% due to the hypothetical person's specific limitations, resulting in approximately 159,000 jobs in the national economy.  (Id.)  Finally, the ALJ asked the VE if her testimony was consistent with the DOT; she confirmed it was consistent with respect to the DOT, and that her testimony with respect to the aforementioned limitations was based on her education and training.  (AR 68, 144.)  On this record, the ALJ reasonably relied upon the VE's expertise and testimony.  See Massachi, 486 F.3d at 1152.

### c.      Waiver of Challenge

Finally, the Court notes Plaintiff's attorney had an opportunity to cross-examine the VE at the hearing, and did not challenge the VE's credentials or her findings.  (See AR 140, 145.)  Nor did Plaintiff's attorney ask any questions about the VE's testimony with respect to the RFC limitations identified by the ALJ.  (See AR 145.)  Thus, Plaintiff did not challenge the VE's testimony with respect to any apparent conflict with the DOT as to the RFC limitations.  As such, the objection is deemed waived.  Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (holding that, "at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal," and rejecting brand new challenge based on VE testimony)).

In sum, the Court finds the ALJ reasonably relied on the VE's testimony at step five to find Plaintiff could perform other work.

### VI.

### CONCLUSION AND ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.      Plaintiff's motion for summary judgment appealing the decision of the Commissioner of Social Security (ECF No. 18) is DENIED;

2.      Defendant's cross-motion for summary judgment (ECF No. 22) is GRANTED; and

3.     The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Laura Pineda, and close this case.

IT IS SO ORDERED.

Dated:   **August 18, 2023**

UNITED STATES MAGISTRATE JUDGE